IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE CO., a/s/o JORGE PINA, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 16-cv-4161 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| ELECTROLUX HOME PRODUCTS, INC. *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion to quash the subpoena issued to non-party the Wright Group, Inc., filed by Plaintiff Allstate Insurance Company ("Plaintiff") [18] and a motion to quash that same subpoena filed by non-party Wright Group, Inc. ("Wright Group") [24]. Defendant Electrolux Home Products, Inc. ("Defendant") opposes both motions. See [22], [26]. Plaintiff also filed a reply in support of its motion. [See 25.] For the reasons stated below, both Plaintiff's motion [18] and Wright Group's motion [24] are granted in part and denied in part. Wright Group shall produce documents responsive to the subpoena as set forth below.

**I.  Background**

This products liability action relates to a fire at Plaintiff's insured's property that Plaintiff alleges was caused by a defective dryer manufactured and distributed by Defendant. [See 1.] On November 29, 2016, Plaintiff identified Michael Stoddard and Ronald Parsons of the Wright Group as its testifying expert witnesses. [13.] Plaintiff amended this disclosure on May 26, 2017, to remove Mr. Parsons's name, leaving Mr. Stoddard as the only identified expert from the Wright Group. [17.]  Mr. Stoddard issued an expert report in this case dated November 23,

2016. [See 22, Exhibit B (Stoddard Report).] Mr. Stoddard was deposed on May 31, 2017. [See 22, Exhibit C (Stoddard Deposition).]

On May 4, 2017, Defendant issued a Federal Rule of Civil Procedure ("Rule") 45 subpoena to Wright Group requesting various categories of documents. The categories disputed in this motion request production of billing records and invoices for dryer storage and expert consulting on behalf of Plaintiff that is unrelated to the instant case,[1] corporate ownership records,[2] and information regarding the compensation of Wright Group employees.[3] Plaintiff filed a motion to quash the subpoena and for an entry of a protective order on May 26, 2017 [18], and Defendant filed an objection [22]. Wright Group then moved for entry of a protective order or to quash this same subpoena on July 25, 2017 [24], and Defendant again filed an objection [26].

Plaintiff and Wright Group broadly argue that these requests are not reasonably calculated to lead to the discovery of admissible evidence, would be unduly burdensome to comply with for Wright Group, and are seemingly meant to harass Wright Group employees.

Defendant argues that an expert witness's potential biases are relevant and discoverable. According to Defendant, although Mr. Stoddard is Plaintiff's testifying expert here, the Wright Group produced his expert report through the collective efforts of all of its employees, including

---

[1] [See 18, Exhibit 1 (Wright Group Subpoena), at 3] (requesting production of "[a]ny and all billing records from the Wright Group for storage for all dryers stored on behalf of Allstate Insurance Company in 2016-2017," "Wright Group's invoices from 2007 to the present for expert consulting regarding Electrolux-manufactured dryers on behalf of Allstate Insurance Company for any claim," and "Wright Group's invoices from 2007 to the present for the storage of Electrolux-manufactured dryers stored on behalf of Allstate Insurance Company for any claim").

[2] [See 18, Exhibit 1 (Wright Group Subpoena), at 3] (requesting production of "[d]ocuments identifying the board of directors of the Wright Group, Inc.," "[d]ocuments identifying the officers of the Wright Group, Inc.," and "[d]ocuments identifying all owners of the Wright Group, Inc.").

[3] [See 18, Exhibit 1 (Wright Group Subpoena), at 3] (requesting production of "[d]ocuments stating compensation policies for Fire Analysts of the Wright Group, Inc." and "[d]ocuments stating any bonus structure or policies for Fire Analysts of the Wright Group, Inc.").

2

Mr. Parsons, and is therefore the true "expert witness." To support this argument, Defendant points to deposition testimony from Mr. Stoddard indicating that Wright Group employees work together on fire analyses and developing test protocols. [See 22 at 3–8.] Defendant also points to the fact that Mr. Parsons and Mr. Stoddard have co-signed substantially similar expert reports in several factually similar cases against Defendant and argues that the report in this case, like these substantially similar reports, is really co-authored by both Mr. Parsons and Mr. Stoddard. [See *id.* at 2.] Defendant argues that the requested documents are relevant to the potential biases of Wright Group as an entity and are therefore discoverable. Defendant further argues that the requested categories of documents are particularly necessary because Mr. Parsons's credibility has been called into question in a motion for civil contempt pending in the Western District of Louisiana. [See 22, Exhibit M (*Sonnier* Motion).]

## II. Legal Standard

Rule 26(b)(1) provides that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).[4] A district court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party moving for entry of a protective order bears the burden of showing that good cause exists. *Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015); *Sloan Valve Co. v. Zurn Indus.*, 2012 WL 5499412, at *1 (N.D. Ill. Nov. 13, 2012). The district court has broad discretion as to whether a protective order under Rule 26(c) is appropriate. *Sloan Valve Co.*, 2012 WL 5499412, at *1.

---

[4] To the extent that the moving parties focus on whether the discovery requests at issue "are reasonably calculated to lead to the discovery of admissible evidence," they point to the wrong standard. That language was contained in a prior version of Rule 26, but was omitted from the current rule, which took effect on December 1, 2015.

3

Rule 45 governs the issuance of subpoenas during litigation. Rule 45(a) allows a party to issue a subpoena commanding a person to produce designated documents at a specified time and place. Fed. R. Civ. P. 45(a)(1)(iii). "The scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule 26(b)(1)." *In re Kleimar N.V. v. Benxi Iron & Steel Am., Ltd.*, 2017 WL 3386115, at *7 (N.D. Ill. Aug. 7, 2017) (internal quotation marks and citation omitted).

Under Rule 45(d), the district court "[o]n timely motion" must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). A burden is considered undue when "the burden of compliance * * * would exceed the benefit of production of the material sought by [the subpoena]." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). To assess whether such an undue burden exists, the court considers numerous factors, including "the likelihood that compliance will result in production of the information, whether the discovery is unreasonably cumulative or duplicative, [and] whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source[.]" *Mosely v. City of Chi.*, 252 F.R.D. 421, 427 (N.D. Ill. 2008). Non-parties generally are entitled to greater protection under Rule 45 when making this assessment. See *Patterson v. Burge*, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005). A party moving to quash has the burden of demonstrating that an undue burden exists. *Pac. Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012). Ultimately, the decision whether to quash or modify a subpoena is within the discretion of the district court. See *Griffin v. Foley*, 542 F.3d 209, 223–24 (7th Cir. 2008); *Nw. Mem'l Hosp.*, 362 F.3d at 928.

### III. Analysis

#### A. Procedural Issues

As a threshold matter, the Court must address the procedural objections that Defendant has raised to both motions. See [22], [26].

##### 1. Plaintiff's Motion

Regarding Plaintiff's motion [18], Defendant argues that Plaintiff lacks standing under Rule 45 to challenge a subpoena issued to non-party the Wright Group. [22 at 11–13.] Plaintiff does not address this issue in its motion. The Court agrees that Plaintiff lacks standing based on Rule 45 because a party generally has no standing to move to quash a subpoena issued to a third party. See *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 186–87 (N.D. Ill. 2013); *Wi-LAN, Inc. v. LG Elecs., Inc.*, 2011 WL 148058, at *3 (N.D. Ill. Jan. 18, 2011). As an exception, a party does have standing to move to quash a non-party subpoena "if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982); see also *Parker*, 291 F.R.D. at 187 (examples of such legitimate interests include "the assertion of work product or attorney-client privilege, interference with business relationships, or production of private information about the party that may be in the possession of a third party"). Plaintiff has not argued that it has any legitimate interest that would be infringed by the subpoena to the Wright Group but instead challenges the subpoena only on the grounds that it seeks irrelevant information and compliance with the subpoena would be unduly burdensome. But "[s]uch objections are for the subpoena recipients to make." *Parker*, 291 F.R.D. at 187. As a non-recipient of the subpoena, Plaintiff has no interest in any undue burden that compliance would require, and Plaintiff thus has no standing to object on that basis.

The Court's inquiry is not over, though, because Plaintiff's motion also requests a protective order pursuant to Rule 26(c). [See 18 at 6.] District courts have found that a party who lacks standing under Rule 45 to challenge a subpoena may "achieve a similar end under Rule 26" by requesting a protective order relating to document requests served on a third party. *Mfr. Direct, LLC v. Directbuy, Inc.*, 2007 WL 496382, at *3 (N.D. Ind. Feb. 12, 2007) (concluding that the weight of authority in the Seventh Circuit allows a party who lacks standing under Rule 45 to still move for a protective order under Rule 26); *Hobley v. Chi. Police Commander Burge*, 445 F. Supp. 2d 990, 993 n.4 (N.D. Ill. 2006) ("Defendants assert that Plaintiffs lack standing to move to quash the [non-party] subpoenas * * * [but] [i]t is not necessary to decide that issue, since Plaintiffs undoubtedly have standing to seek a protective order under [Rule] 26(c)."); *Special Mkts. Ins. Consultants, Inc. v. Lynch*, 2012 WL 1565348, at *1–2 (N.D. Ill. May 2, 2012) (party had standing to object to non-party subpoena under Rule 26(c)(1)); *Vodak v. City of Chi.*, 2006 WL 3267428, at *6 (N.D. Ill. Nov. 9, 2006) (considering the merits of a motion for a protective order barring a non-party's deposition filed by the plaintiff); *Cusumano v. NRB, Inc.*, 1998 WL 673833, at *4 (N.D. Ill. Sept. 23, 1998) (finding that because defendant had sought a protective order under Rule 26 rather than Rule 45, defendant had standing to object to a non-party subpoena). See also *Smith v. HCSC-Blood Ctr., Inc.*, 2010 WL 4104669, at *2 (E.D. Pa. Oct. 18, 2010) (denying motion to quash subpoenas issued by another district court based on a lack of jurisdiction, but noting that "because defendants have also sought a protective order with respect to the information sought by these subpoenas, our review of this matter has not yet concluded"). Therefore, because Plaintiff has standing to seek a protective order under Rule 26, the Court will proceed to consider the merits of Plaintiff's motion.[5]

---

[5] The Court notes that Plaintiff has not complied with Rule 26's requirement that a motion for a protective

### 2. Wright Group's Motion

Regarding Wright Group's motion [24], Defendant argues that it should be dismissed as untimely because the motion was not filed before the time for compliance with the subpoena. [See 26 at 2–3.]

Rule 45(d)(3) states that a court must quash or modify a subpoena on "timely" motion. Fed. R. Civ. P. 45(d)(3). The word "timely" is not defined in the rule. Other courts in this district have held that a motion to quash "must be made at or before the time of compliance." *Cent. States, Se. & Sw. Areas Pension Fund v. GWT 2005 Inc.*, 2009 WL 3255246, at *1 (N.D. Ill. Oct. 6, 2009); see also *Flagstar Bank, FSB v. Freestar Bank, N.A.*, 2009 WL 2706965, at *3 (N.D. Ill. Aug. 25, 2009) (noting that because Rule 45 prescribes no compliance time for a subpoena, the reasonableness of the time for compliance chosen must be determined on a case-by-case basis). Some courts have also reasoned that the lack of a definition for "timely" in the federal rules points to discretion on the part of the district court to determine whether a motion to quash is considered timely. See *Woodard v. Victory Records, Inc.*, 2014 WL 2118799, at *4 (N.D. Ill. May 21, 2014) (concluding that, "[w]hile the court does not wish to condone a party's failure to challenge a subpoena within the time delineated by the rules," the conduct between the parties indicated that the time for compliance had not yet lapsed); see also *Ace Hardware Corp. v. Celebration Ace Hardware, LLC*, 2009 WL 3242561, at *2 (D. Del. Oct. 8, 2009) (exercising discretion to consider the merits of a motion to quash even though it was not filed until over a month after compliance was due).

---

order include a certification that it has conferred or attempted to confer with Defendant in an effort to resolve the dispute without court action. See Fed. R. Civ. P. 26(c)(1). However, in the interest of moving the case forward expeditiously (see Fed. R. Civ. P. 1), the Court declines to deny the motion solely on that ground in order to address other issues with the subpoena itself. See *Parungao v. Cmty. Health Sys., Inc.*, 2015 WL 7195909, at *1 (N.D. Ill. Nov. 16, 2015). Cf. *Charvat v. Travel Servs.*, 2015 WL 76901, at *2 (N.D. Ill. Jan. 5, 2015) (denying a party's motion to quash based on lack of standing but *sua sponte* quashing the subpoena based on undue burden concerns).

Here, the subpoena to Wright Group was served on May 4, 2017, and the time for compliance was set as May 24, 2017. Wright Group's motion to quash was filed on July 25, 2017, two months after the time set for compliance. However, because the Court has concluded that it will proceed to the merits of Plaintiff's motion (see n.5, *supra*), the Court will exercise its discretion to entertain the additional arguments made by Wright Group in its motion.

### B. The Wright Group Subpoena's Disputed Requests

Regarding the merits of the Wright Group subpoena, Defendant argues that all of the documents it has requested are relevant to the issue of Wright Group's expert bias and are therefore discoverable. Defendant further argues that because Mr. Stoddard's work as an expert in this case is the product of Wright Group employees' collective efforts, its requests for documents relevant to Wright Group's bias are proper. [See 22 at 14–18.]

An expert witness's potential biases are a relevant topic of inquiry and are thus within the scope of discovery. See, e.g., *Behler v. Hanlon*, 199 F.R.D. 553, 561–63 (D. Md. 2001) (ordering production of expert witness's gross income for preceding five years earned as an expert, a list of cases in which the expert provided such services for preceding five years, and the name of each insurance company for which expert provided services for preceding ten years); *Spencer v. United States*, 2003 WL 23484640, at *11–12 (D. Kan. Dec. 16, 2003) (finding that information regarding expert's annual income from litigation consulting is within the scope of permissible discovery); *Butler v. Rigsby*, 1998 WL 164857, at *4 (E.D. La. Apr. 7, 1998) (finding that magistrate judge's decision to allow discovery of expert witness's net income and percentage of net income that is litigation-related was not clearly erroneous because this information is relevant to show bias). See also *Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto Ins. Co.*, 2011 WL 4507417, at *5 (E.D. Mich. Sept. 29, 2011) ("[E]xpert witnesses in

the business of furnishing litigation support * * * may have a motive to slant testimony to favor their customers and promote the continuation of their consultation business."). A party seeking such discovery should point to something that demonstrates that the requested documents are both relevant and proportional to the needs of the case, as Rule 26 dictates.

To support its request, Defendant here relies on aspects of Mr. Stoddard's report and deposition testimony suggesting that the expert report in this case is the product of "collective efforts" of Wright Group employees, on the apparent relationship between Plaintiff and Wright Group in similar cases, and on a motion filed in a case in the Western District of Louisiana seeking to hold Mr. Parsons, another Wright Group employee, in civil contempt.

The issues of expert bias raised by Defendant are relevant to this case. Defendant has demonstrated, and the Wright Group has not contested, that its employees (including Mr. Stoddard) have served as experts on several other substantially similar cases involving this Plaintiff and this Defendant. See [22 at 2–9]; [24 at 8]. The Court is hesitant to impute the potential bias of all Wright Group employees onto the one Wright Group employee identified as a testifying expert in this case. See, e.g., *Silgan Containers v. Nat'l Union Fire Ins.*, 2011 WL 1058861, at *5–7 (N.D. Cal. Mar. 23, 2011) (compelling production of information relevant to expert witness's bias, but refusing to compel the production of that same information from the expert's company because "the court cannot assume that [the expert's] potential bias is co-extensive with his affiliation with [his firm]"). But Mr. Stoddard's employment with a company that has worked with Plaintiff extensively in similar cases and has earned income from both expert and storage services from this Plaintiff certainly is relevant to his own bias.[6] See *Burger v. Allstate Ins. Co.*, 2009 WL 1587396, at *2 (E.D. Mich. June 8, 2009) (a party "should be

---

[6] The Court will not accord any weight to the allegations in the filing from the *Sonnier* case that Defendant has attached to its opposition, as there has been no ruling on the allegations contained within that document. [See 22 Exhibit M (*Sonnier* Motion).]

9

entitled to obtain information relating to the volume of work these expert witnesses perform" for the other party in similar cases). The Court will therefore consider the relevance of, and objections to, each disputed category.

### 1. Billing Records and Invoices for Dryer Storage and Expert Consulting

Plaintiff and Wright Group argue that the request for billing records over a 10 year period is irrelevant and overly broad and that searching for those records would be unduly burdensome and expensive. These documents are relevant for the reasons explained above. Moreover, neither Plaintiff nor the Wright Group has persuasively demonstrated why producing these records would constitute an undue burden. See *Papst Licensing GmbH & Co. KG v. Apple, Inc.*, 2017 WL 1233047, at *3 (N.D. Ill. Apr. 4, 2017) ("[O]ne claiming undue burden must do more than intone the phrase."). That being said, taking into account the proportionality principle, the Court will limit the durational scope of the materials to be produced, which will reduce the burden on Wright Group. See *McCall v. State Farm. Mut. Auto. Ins. Co.*, 2017 WL 3174914, at *8–9 (D. Nev. July 26, 2017); *Silgan Containers*, 2011 WL 1058861, at *5–7; *Behler*, 199 F.R.D. at 562. In particular, Wright Group need only produce at this time (1) its billing records for storage of all dryers stored on behalf of Plaintiff in the past year; (2) invoices from 2012 to the present for expert consulting regarding Defendant-manufactured dryers on behalf of Plaintiff; and (3) invoices from 2012 to the present for storage of Defendant-manufactured dryers on behalf of Plaintiff.

### 2. Corporate Ownership Records

Plaintiff and Wright Group argue that the corporate records of Wright Group are also irrelevant, and that this information is available to Defendant through other means.

10

The Court agrees that this information does not need to be produced. Its relevance to the issue of Mr. Stoddard's bias is minimal at best, and it is available to Defendant through the Massachusetts Secretary of State. [See 18 at 8.] Therefore, Wright Group need not produce any documents in response to this request.

### 3. Compensation of Wright Group Employees

Plaintiff and Wright Group argue that the personal financial records of Wright Group employees are irrelevant and have been requested solely to harass Wright Group employees. However, the way the Court reads these requests, Defendant is not asking for the personal financial records of Mr. Stoddard or any other Wright Group analysts. Rather, Defendant requests documents stating any compensation or bonus policies that are used internally at the Wright Group. This information, if it exists, would be "relevant to show its potential bias or motive to retain [analysts] who will render opinions favorable to the insurer." *McCall*, 2017 WL 3174914, at *8. The production of such general policies would not unduly harass any Wright Group employees because they would not include any of their personal information. Therefore, Wright Group only needs to produce documents, to the extent they exist, stating any general compensation or bonus policies for its fire analysts.

## IV. Conclusion

For the reasons stated above, both Plaintiff's motion [18] and Wright Group's motion [24] are granted in part and denied in part. Wright Group shall produce documents responsive to the subpoena as follows: (1) billing records from the Wright Group for storage of all dryers stored on behalf of Plaintiff in the past year; (2) invoices from 2012 to the present for expert consulting regarding Defendant-manufactured dryers on behalf of Plaintiff; (3) invoices from 2012 to the present for storage of Defendant-manufactured dryers on behalf of Plaintiff; and (4)

documents, to the extent that they exist, stating any general compensation or bonus policies for its fire analysts.

Dated: November 15, 2017

Robert M. Dow, Jr.
United States District Judge